TORPEY *v.* DAVIS.

1. MASTER AND SERVANT—NEGLIGENCE—QUESTION FOR JURY.
  In an action for injuries to plaintiff's hand, caused by his
    superior's allowing a steam shovel to drop on it while
    plaintiff was climbing into a car to resume work at his
    superior's orders, the question as to whether the operator
    of the shovel was negligent, either through inattention
    or incompetency, was a question for the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
  The question of plaintiff's contributory negligence, *held*,
    under the circumstances, a question of fact for the jury.

3. SAME—ASSUMPTION OF RISK—QUESTION FOR JURY.
  Since neither plaintiff nor the operator of the shovel
    anticipated that it would drop on the side of the car rather
    than into the car, it cannot be said that plaintiff assumed
    said risk, and the submission of the question to the jury,
    under proper instructions, was as favorable to defendant
    as it was entitled to.

4. DAMAGES—EXCESSIVE VERDICT.
  A verdict for $2,500 for the loss of three fingers on the
    right hand and for much pain and suffering, where the
    injury is permanent, and plaintiff, who is but 18 years
    of age, labors with his hands, *held*, not excessive.

Error to Wexford; Lamb (Fred S.), J.    Submitted
October 10, 1922.    (Docket No. 64.)    Decided De-
cember 5, 1922.

Case by Dennis Torpey, an infant, by his next
friend, against James C. Davis, director general of
railroads, for personal injuries.    Judgment for plain-
tiff.    Defendant brings error.    Affirmed.

  On the question of assumption of risk by servant of dangers
from employment of incompetent servant, see note in L. R. A.
1916F, 1212.
  On excessiveness of verdicts in actions for personal injuries
other than death, see note in L. R. A. 1915F, 30.

*E. M. Davis, Henry Miltner*, and *E. J. Millington,* for appellant.

*F. H. Dusenbury*, for appellee.

BIRD, J.   In January, 1920, plaintiff, a farmer boy, 18 years of age, went to Cadillac to work during the cold weather.   After doing some work in a factory he hired to the Grand Rapids & Indiana Railway Company to work in and around its round house.   His time was largely taken in shoveling cinders.   On Sundays he was assigned to work with a steam shovel operated at the end of a boom 30 feet long, which was engaged in transferring coal from coal cars to locomotive tenders.   His particular work on the Sunday in question was shoveling coal from the corners of the car so that the steam shovel or dipper could get hold of it.   In the latter part of the afternoon he left his work on an errand to the cab of the locomotive, which was being coaled.   After a short interval he was ordered back to his work on the car by Louis Manning, who was operating the steam shovel and who was his superior.   Plaintiff immediately complied with the order.   When he reached the coal car he placed his hands on top of the side of the car, which was about eight feet high, to help himself up, and while in that position the operator swung the empty shovel back to the car and permitted it to drop on plaintiff's right hand, thereby crushing the first, second and third fingers.

Defendant was charged with negligence in permitting the shovel to drop on to plaintiff's fingers. The case was submitted to the jury under the Federal act and a verdict returned of $2,500.

1. The principal ground of complaint of the defendant is that the trial court should have directed a verdict in its behalf because there was no testimony which showed that it was negligent in the premises.

The grounds of negligence alleged in the declaration are somewhat numerous. Among them are allegations that defendant did not furnish plaintiff with a safe place in which to work. That it did not furnish safe tools with which to work; that the tools were defective. It was also charged that defendant's servant operating the steam shovel was incompetent and that the steam shovel was operated in a negligent manner. We do not think that any question of safe place was involved. There is some testimony that one of the small wheels upon which the base of the steam shovel revolved was flat and would slide instead of turning. The testimony of several of defendant's witnesses was to the effect that this would not affect the operation of the steam shovel. If the operation were affected in any way by the defect it does not clearly appear in the testimony. It does appear that the day in question was the second day that Manning had operated the steam shovel, and that he was not well versed in operating it. It was shown that he ordered plaintiff to resume his work in the car. Plaintiff, in compliance therewith, started for the car. The top of the coal car being higher than his head, he reached the top of it with his hands to assist himself in getting into the car. As he did so, Manning lowered the steam shovel or dipper in such a way as to permit it to drop on plaintiff's hand. Manning was in a position to command a view of the shovel at all times. He could also see plaintiff executing his order, and it was open for the jury to infer that had he been giving attention to his work, or operating the shovel in a proper manner, he could have avoided coming into collision with plaintiff's hand. Whether the collision was due to Manning's inattention or to his incompetency is not very important as both phases are covered in the declaration.

2. It is argued at some length that the steam

shovel was in plain sight of plaintiff and that he knew from the noise it made that it was being returned to the car and that he should have observed and avoided it, and that his failure to do so constituted him guilty of contributory negligence which was the proximate cause of the injury, and, therefore, he could not recover. When plaintiff started to get upon the car he could not see the dipper but he quite likely knew that it was being returned to the car because of the noise it made. But this would not advise him that it would be dropped on the side of the car rather than in the car. The dropping of the dipper on the side of the car was an unusual thing and plaintiff had no reason to expect that the dipper would go bumping along on the top of the side of the car before it was lowered into the car. Had it not done this plaintiff would not have been injured because his head was not above the top of the car. Had the proofs shown that it was customary for the dipper to go bumping along on the top of the sides of the car, and plaintiff knew of it, a different question would have been presented. The mere fact that plaintiff knew there was more or less oscillation of the dipper when it was being returned to the car did not charge him with notice that it was liable to come in collision with the top of the car. The question of plaintiff's contributory negligence was one of fact for the jury and we think it was properly submitted to them under the Federal rule.

3. It is argued that the happening was one of the dangers incident to the employment, and, therefore, it was assumed by plaintiff when his employment began. We think it is clear that the dipper was dropped on to plaintiff's hand either because it was negligently operated or because of the incompetency of the operator, as neither Manning nor plaintiff anticipated it would drop on the side of the

car rather than in it. It could hardly be said that this, as a matter of law, was one of the hazards which plaintiff's contract of employment included. The trial court submitted to the jury the question of assumed risk, saying to them in part that:

"I further charge you that if you find that this danger was known to the plaintiff, or that by the exercise of reasonable diligence on his part, he ought to have known the danger at the time he went to work, and at the time he was injured, it will be your duty to find a verdict for the defendant in this case.

"The jury is instructed as a matter of law, that a servant when he enters the service of an employer implicitly agrees that he will assume all risks which are obvious and naturally incident to the particular service in which he engages, and if the jury believe from the greater weight of the evidence that the injury to the plaintiff was only the result of one of the risks ordinarily incident to the work in which plaintiff was engaged and was obvious and not otherwise, then he cannot recover in this case and your verdict should be no cause of action."

This instruction on the question of assumed risk was fully as favorable as defendant was entitled to.

4. The further point is made that the verdict is excessive. The testimony shows that plaintiff has lost the use of three fingers on his right hand. This is important to him as he labors with his hands. The testimony shows that the injury caused him much pain and suffering. The injury is a permanent one and will always be a handicap to him in his work. We are not impressed that the verdict is excessive.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, SHARPE, and STEERE, JJ., concurred. MOORE, J., did not sit.